UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIPPON EXPRESS U.S.A. (ILLINOIS), INC., :

              *Plaintiff*, :    06 Civ. 0694 (PKC)

- against - :

M/V CHANG JIANG BRIDGE and YANG :
MING MARINE TRANSPORT
CORPORATION, :

              *Defendant*. :

                              :

**PLAINTIFF NIPPON EXPRESS U.S.A. (ILLINOIS), INC.'S
MEMORANDUM IN OPPOSITION OF DEFENDANT
YANG MING MARINE TRANSPORT CORP.'S MOTION TO
DISMISS THE CLAIMS AGAINST IT ON THE GROUND
<u>OF AN ALLEGED FOREIGN FORUM SELECTION AGREEMENT</u>**

---

David T. Maloof
Thomas M. Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
Phone: (914) 921-1200
Fax: (914) 921-1023

*Attorneys For Plaintiff Nippon Express
U.S.A. (Illinois), Inc.*

**TABLE OF CONTENTS**

INTRODUCTION..........................................................................................1

STATEMENT OF ALLEGED FACTS...................................................................2

ARGUMENT..............................................................................................3

    I.    THE YANG MING BILL OF LADING PROVIDES THAT
          UNDERLYING CARRIER CONTRACTS GOVERN IN
          PLACE OF IT FOR MULTIMODAL LOSSES; THE
          APPLICABLE UNDERLYING CARRIER CONTRACT
          HERE DOES NOT REQUIRE U.K. JURISDICTION..............................3

    II.    THE MANY AMBIGUITIES INVOLVED IN
          CONSTRUING THE VARIOUS CONTRACTS AT
          ISSUE MUST BE CONSTRUED AGAINST YANG MING......................9

CONCLUSION............................................................................................11

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York  10580
(914) 921-1200
*Attorneys for Plaintiff Nippon Express
U.S.A. (Illinois), Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NIPPON EXPRESS U.S.A. (ILLINOIS), INC.,   :

               *Plaintiff,*   :

   - against -   :

M/V CHANG JIANG BRIDGE and YANG   :
MING MARINE TRANSPORT
CORPORATION,   :

               *Defendant.*   :

   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

06 Civ. 0694 (PKC)

**PLAINTIFF NIPPON EXPRESS U.S.A. (ILLINOIS), INC.'S
MEMORANDUM IN OPPOSITION OF DEFENDANT
YANG MING MARINE TRANSPORT CORP.'S MOTION TO
DISMISS THE CLAIMS AGAINST IT ON THE GROUND
OF AN ALLEGED FOREIGN FORUM SELECTION AGREEMENT**

## INTRODUCTION

This memorandum of law is submitted on behalf of plaintiff, Nippon Express U.S.A. (Illinois), Inc., ("Nippon Express") in opposition to defendant Yangming Marine Transport Corp.'s ("Yang Ming") motion to dismiss the claims against it on the ground of a forum selection agreement.

## STATEMENT OF ALLEGED FACTS

This case arises out of a shipment of five containers holding 8,400 cartons of HP ink toner cartridges valued at $1,078,018 being shipped by Canon U.S.A., Inc. back to Japan from Oakland in September of 2004, for minor repairs. (see Yang Ming Bill of Lading front side, Maloof Decl., Exh. A and shipping invoice, Exh. B).

The allegations are as follows. While the containers in question were being held at TransBay Terminal in Oakland, the shipper (Canon) determined that they would need refrigeration in order to safely cross the Pacific (it is known that temperatures inside containers during transportation overseas cartridges can reach over 60 degrees Celsius (140 degrees Fahrenheit)). Canon so advised Nippon Express; Nippon Express so advised the ocean carrier, Yang Ming (see notice, Maloof Decl. Exh. C). Yang Ming in turn so-advised the terminal TransBay. Nonetheless, due to an oversight, TransBay shipped the dry containers anyway. Indeed, the Terminal not only failed to "dray-off" (remove) the five containers from the cargoes to be loaded, but they loaded four of the five containers in the top row on deck of the vessel, in direct sunlight. (see Survey Report, Maloof Decl., Exh. D). The toner cartridges upon arrival in Japan were sampled and inspected and a large portion found to be defective. *Id.*

The value of the damaged toner exceeded $500,000. On June 20, 2006, Sompo Japan Insurance Company, the cargo insurer, thus paid ¥60,618,621 (over $500,000) to Canon to cover their loss. (see Subrogation receipt, Maloof Decl., Exh. E). Sompo then claimed against their direct carriers, the NVOCC (non-vessel operating common carrier), Nippon Express.[1]

Yang Ming has since confirmed in writing that this loss was caused "due to our

---

[1] "A consolidator who acts as a carrier by arranging for the transportation of goods from port to port is called a nonvessel operating common carrier by water." *N. L. R. B. v. International Longshoremen's Ass'n*, 447 U.S. 490 (1980).

terminal negligence," due to "terminal overlook" and further stated that they are "sorry for their huge mistake." (see various Yang Ming emails, Maloof Decl., Exh. F).

As a precaution, this action was filed by Nippon Express in this Honorable Court on January 30, 2006, then placed on the Court's suspense docket. After long negotiations in Japan, on December 21, 2006, Sompo and Nippon Express (by its insurer) settled the claims between them for $55,000 (Nippon Express asserted a possible limitation of liability under its Bill of Lading) (see wire transfer advice, Maloof Decl., Exh. G). Sompo later assigned to the insurer of Nippon Express all claims that it had remaining against any other carriers. This action was then removed from the Court's suspense docket.

## ARGUMENT

### I.

### THE YANG MING BILL OF LADING PROVIDES THAT UNDERLYING CARRIER CONTRACTS GOVERN IN PLACE OF IT FOR MULTIMODAL LOSSES; THE APPLICABLE UNDERLYING CARRIER CONTRACT HERE DOES NOT REQUIRE U.K. JURISDICTION

Defendant Yang Ming moves to dismiss this action as against it only (not with respect to the *in rem* claim against the vessel Chang Jiang Bridge) on the basis of a forum selection clause in its Bill of Lading[2] (Clause 26) which reads as follows:

> **Except as otherwise provided specifically herein**[3] any claim or dispute **arising under the Bill of Lading** shall be governed by the Laws of England and determined in English courts sitting in the city of London to the exclusion of the jurisdiction of the courts of any other place. In the event this clause is inapplicable under local law then jurisdiction and choice of law shall lie in either the port of loading or port of

---

[2] A more readable copy of the Yang Ming bill of lading annexed to Defendant's motion as provided to Plaintiff is annexed to the accompanying Maloof Declaration as Exhibit A.
[3] Significantly, the introductory phrase to this paragraph does not say: "Notwithstanding any other terms herein," an introductory phrase commonly found in bills of lading.

discharging at Carrier's option.

(see reverse side of Yang Ming Bill of Lading, Maloof Declaration, Exh. A). (Emphasis Added)

The clause in question expressly states that it only applies English law and jurisdiction to claims "arising under the Bill of Lading" and adds the further caveat "except as otherwise provided specifically herein."

In fact, the claims being asserted in this action do not arise under the bill of lading contract at all for the simple reason that another clause in the bill of lading, the "Multimodal Transport Clause"--Clause 7(B)(2)--"specifically" requires that if there is a separate contract between Yang Ming and any underlying carrier involved in the carriage the "terms and conditions" of that contract shall "govern" in lieu of the Yang Ming bill of lading contract. That Clause 7(B)(2) states:

> **Notwithstanding the foregoing,** in the event there is a private contract of Carriage between the Carrier and any Underlying Carrier, **such Multimodal Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length** and copies of such contract(s) shall be available to the Merchant at any office of the Carrier upon request. (Emphasis added).

*Id.* (Emphasis added).

Here, the terminal whose negligence caused the damage in question, Total Terminals Internationals LLC a/k/a TransBay Terminal, had their own underlying carrier contract referenced to as the "Stevedore and Terminal Service Agreement" (hereinafter referred to as the "Underlying Carrier Contract") with Yang Ming which now by virtue of Clause 7(B)(2) "governs" plaintiff's claims.[4] That Underlying Carrier Contract calls for both California law and

---

[4] The existence of this Stevedoring and Terminal Agreement was not discussed at the pre-motion conference held with the Court because it was only obtained by plaintiff's counsel from

(in certain cases) for arbitration in California to apply. (Maloof Declaration, Exh. H, General Terms and Conditions, Articles 14.0 and 15.4). It is also sets forth a relatively strict liability standard that the Terminal will be liable "for all loss and/or damage...to cargo...resulting from its acts, admissions or fault or that of its employees..."). *Id.* (Article 4.1). In addition, since Clause 7(B)(2) expressly specifies that this said contract is now to be deemed "set forth at length" in the Yang Ming bill of lading for purposes of any claims against Yang Ming, <u>its terms also must be considered to be "provided specifically" in the same said bill of lading within the meaning of Clause 26.</u>

It is undisputed that this loss has occurred because TransBay, acting as a sub-contractor to Yang Ming, specifically and negligently shipped the shipper (Canon's) cargo in dry containers after being directed not to do so (see emails, Maloof Declaration, Exh. F).

There is no question that the shipment at issue involves a "Multimodal Transport" shipment. The term "Multimodal Transport" is defined in the Yang Ming bill of lading as follows:

> "Multimodal Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces.

*Id.*

On the Yang Ming Bill of Lading in question, both such boxes are filled in. (Maloof Declaration, Exh. A) There is also no question that TransBay Terminal is an "Underlying Carrier" within the meaning of the Yang Ming bill of lading. The term "Underlying Carrier" is defined therein at Clause 1(1) as follows:

> "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier **for any part of the transportation** of the shipment covered by this Bill of

---

defendant after the conference. A copy of that Agreement is annexed to the accompanying Maloof Declaration as Exhibit H.

Lading. (Emphasis added).

*Id.*

Certainly acting as a stevedore and moving cargo around a terminal and onto vessels is a critical part of "transportation." For example, the analogous term "Carriage" is defined in the Yang Ming bill of lading at Clause 1(a) as follows:

> "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.

*Id.*

In summary, the Yang Ming bill of lading expressly provided that when Multimodal Transport is undertaken, as was the case here, to the extent there exists a "private contract of Carriage between the Carrier and any Underlying Carrier" such Multimodal Transportation is governed by the Underlying Carrier Contract, which supercedes the Yang Ming bill of lading.

That Underlying Carrier Contract requires arbitration in California for claims under $100,000, not litigation in London (Exh. H, General Terms and Conditions, Article 14.0). It has no choice of forum provision for larger claims.

By virtue of certain recent developments, Nippon Express (by its insurer)[5] will be asserting herein two claims: one for $55,000 arising in indemnity out of a payment made by Nippon Express to Sompo Japan Insurance Company, as the cargo insurer for Canon, (See NE payment record, Maloof Declaration, Exh. G), and the other for over $500,000 arising by virtue of an assignment to Nippon Express' insurer from the original shipper, Canon.[6]. The Underlying Carrier Contract, which must now be deemed to "govern" this case, does not required litigation

---

[5] The Court will note that Nippon Express recently sought to substitute the name of its insurer as Plaintiff in this action; the Court is presently holding that motion in abeyance.

[6] The details of these two claims were not described in detail in the original complaint filed in this matter in January 2006, because at that time Nippon Express had not made any payments nor taken any assignment; the lawsuit was filed then just to protect certain time limits. It then was placed on the Court's suspense docket until these matters were resolved in Japan.

in the United Kingdom <u>for any of the claims arising under it.</u>

By way of background, most multi-modal bills of lading these days import maritime law (the Carriage of Goods By Sea Act, or COGSA, now found at Note, 46 U.S.C.A. §30701) throughout the transit. See, e.g. *Sompo Japan Ins. Co. of America v. Union Pac. R.R.,*, 456 F.3d 54, 56 (2d Cir. 2006); *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 25 (2004). Yang Ming, in contrast, almost certainly inserted this "Multimodal Transport" clause in their bill of lading to take advantage of certain exculpatory provisions which routinely appear in inland carrier contracts but do not generally appear in ocean bills of lading. For example, inland carrier contracts typically contain a notice of claim provision (usually a requirement that formal claim be filed within 9 months), while bills of lading under COGSA. In addition, inland bills of lading often contain limits of liability of as low as fifty dollars per shipment, much lower than the five hundred dollars per package which ocean bills of lading under COGSA usually contain. Thus, having expressly chosen to opt out of the Yang Ming bill of lading and be governed by this separate contract when Multimodal Transport is at issue, Yang Ming cannot now choose to opt back into it so as to pick and choose the faraway forum of the United Kingdom, for its own strategic reasons.[7]

Indeed, it is particularly significant that Clause 7(B)(2) states that the new "private contract" with an Underlying Carrier that is incorporated therein by reference will "govern" and will do so "as if set forth at length." It does <u>not</u> say that the remaining terms of the Yang Ming bill of lading (such as Clause 26) will govern alongside the terms of the private

---

[7] It is worth noting that the shipment in question traveled from Oakland, California to Japan and there is not a single witness, nor for that matter a relevant document, which would appear to be located in the United Kingdom. Thus, the real reason why Yang Ming prefers United Kingdom jurisdiction is because the claims in question are now almost certainly time-barred there, notwithstanding that they are timely under US law. Thus, this motion is really a deth knell for the claims in question.

contract; rather, again, it expressly states that under Clause 7(B)(2) multimodal claims will now be "governed" by the new private contract. *Ibeto Petrochemical Industries Ltd. v. M/T Beffen,* 475 F.3d 56, 62-4 (2d. Cir., 2007) (the terms of a charter party will govern the relationship between parties where the charter party is incorporated by reference into a bill of lading); *Rosenbruch v. American Export Isbrandtsen Lines,* 543 F.2d 967, 971 (2d. Cir., 1976) (provision in bill of lading which prohibited storage of containers on deck was overridden by tariff provision allowing such storage incorporated by reference in the bill of lading); *Elgie & Co. v. S.S. "S.A. Nederburg,"* 599 F.2d 1177, 1178, Fn. 1 (2d. Cir., 1979) ($500 package limit found in carriers normal bill of lading was included into short form bill of lading governing the carriage where normal bill of lading was incorporated by reference in the short form bill of lading).[8] Most importantly, the Underlying Carrier Contract expressly provides that it "supercedes" "any other agreement." (Exh. H, General Terms and Conditions, Article 15.8).[9] The Underlying Carrier Contract in the Memorandum of Agreement section (Exh. H, page 3 of 18) further provides that only those documents – and the Yang Ming bill of lading is not one of them – define what "this agreement consists solely of."

This case is clearly on point with *Eastern Fish Co. v. South Pacific Shipping Co.,*

---

[8] While an argument could be made based upon established caselaw that the California arbitration clause is not enforceable against Plaintiff due to lack of notice, because its incorporation in the Yang Ming bill of lading is too vague to bind a "stranger to them," *see e.g., New York Marine & General Ins. Co. v. S/S Ming Prosperity,* 920 F.Supp. 416, 427 (S.D.N.Y., 1996), we believe that Yang Ming is estopped by its own contract language from making that argument, as Yang Ming clearly was on notice as to all of its own Underlying Carrier Contract's terms. Moreover, this decision was pre-*Kirby supra,* 54 U.S. 14, 25, wherein the U.S. Supreme Court relaxed the agency test as it relates to downstream contracting by transportation companies with other transportation companies on behalf of a shipper.

[9] While the Underlying Carrier Contract does refer generally to a "Himalya Extension" of the bill of lading's terms at Article 4.2 of the General Terms and Conditions, such a general extension would equally extend the Bill of Lading Clause 7(B)(2), and thus once again revert to the Underlying Carrier Contract taking precedence.

*Ltd.,* 105 F.Supp.2d 234 (S.D.N.Y., 2000). That case involved a shipment of frozen shrimp from a Ecuador to ports in the North Atlantic and Florida. *Id.* at 236. Although never issued, the shipment was to be made under a bill of lading that routinely referenced a service contract. *Id.* at 238. There, as here, the bill of lading (had it been issued) incorporated an underlying contract. *Id.* at 238. There, as here, the underlying contract provided that all cargo was governed (in that case were "subject to") it, even while at the same time bills of lading were "incorporated" into it. *Id.* The Court there held that the underlying contract's terms prevailed over the bill of lading terms. *Id.*

## II.

### THE MANY AMBIGUITIES INVOLVED IN CONSTRUING THE VARIOUS CONTRACTS AT ISSUE MUST BE CONSTRUED AGAINST YANG MING

It is well established that, to the extent the interrelationship of the various contracts at issue here may be ambiguous, that ambiguity must be construed against Yang Ming.[10] Cases holding that form bills of lading are contracts of adhesion which must be construed against their drafter include: *Monica Textile Corp. v. S.S. Tana,* 952 F.2d 636, 643 (2d Cir., 1991), *Allied Chemical Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 482 (2d Cir., 1985), *Mitsui & Co., Ltd. v. American Export Lines, Inc.,* 636 F.2d 807, 822-3 (2d Cir., 1981), *Delphi-Delco Electronics Systems v. M/V Nedlloyd,* 324 F.Supp.2d 403, fn. 4 (S.D.N.Y., 2004). In *Kirby,* 543 U.S. at 31-2, the Supreme Court did suggest that there were no special rules of construction for bills of lading, but the concept that a contract of

---

[10] It is worth mentioning at this point that the logistics clerks at Canon (possibly in Japan) who could be expected to have approved for use the Yang Ming bill of lading in question are normally clerks who have no legal training, and who may well be reading it in a second language. Thus, the fact that it takes eight pages in this legal brief, and even then the equivalent of a Talmudic scholar, to unravel this bill of lading's clauses and its incorporation by reference of a yet a second contract, should not be lost on the Court.

adhesion should be strictly construed is a part of the common law governing contracts and courts have continued applying this rule to bills of lading even after the decision in *Kirby*. *See e.g., Taisheng Intern. Ltd. v. Eagle Maritime Services, Inc.*, 2006 WL 846380, fn. 13 (S.D.Tex., 2006); *Land O'Lakes, Inc. v. Grassland Dairy Products, Inc.*, 2005 WL 300292 (W.D.Wis., 2005). Even the decision in *Kirby* was not a result of the Court finding that the bill of lading should not be strictly construed, but rather was due to it determining that the himalaya clause should be applied because its intention was clear on its face. *Kirby* 543 U.S. at 31-2.

Yang Ming's intentional choice in Clause 7(B)(2) of incorporating local contracts was in fact consistent with the overall repeated theme in its bill of lading that courts should only be asked to interpret their own national laws. Thus, the Yang Ming bill of lading also contains an express conflict of law provision, Clause 7(E) which states as follows:

> In the event the Carriage covered by this Bill of Lading is subject to two or more compulsory national laws, then the national law of the jurisdiction in which any action is brought shall be applicable.

*Id.*

Similarly, even the first sentence of the Yang Ming forum selection clause, Clause 26, appears to link together Yang Ming's choice of British law with its choice of a British forum. This pattern and intent is further revealed in the second sentence of Clause 26 which, again, states as follows:

> In the event this clause is inapplicable under local law, then jurisdiction and choice of law shall be in either the port of lading or port of discharge at carrier's option.

*Id.* Once again, in this section, the bill of lading is consistent in attempting to ensure that any forum selected will only be interpreting its country's own law, which would be the case here if this case remains in the United States, as the Underlying Carrier Contract calls for the application

of California Law.

Moreover, and as an independent basis to deny the pending motion, Clause 26 of the Yang Ming Bill of Lading's inclusion of the phrase "except as otherwise specifically provided herein" as a caveat to its choice of law and forum selection clause is also at best <u>ambiguous</u> as to whether or not the choice of forum portion of the clause will apply when the choice of law clause does not because it has been superseded by another choice of law clause such as, for example, the choice of US COGSA in Clause 7(A)(1) to cover cargo claims. In short, the bill of lading nowhere explains whether or not the phrase "except as otherwise specifically provided herein" refers to a situation where the choice of law clause is superceded or not. The clause can certainly be fairly read that way, especially when read in pairing, the context of the forum and law described above; and indeed, was read that way in this matter by an experienced maritime counsel, which is why this case was filed here to begin with. It is even more unlikely that an untrained logistics clerk would fully understand the clause.

In the end, this ambiguity in the bill of lading must in fact be construed against Yang Ming, not only because its bill of lading is a form contract of adhesion, but also because, as set out above, other sections of the bill of lading make crystal clear Yang Ming's intent to couple choice of law with choice of jurisdiction at every available opportunity.

The language here is anything but clearly in favor of Yang Ming's position.

## **CONCLUSION**

The motion should be denied.

Dated:      June 12, 2007
              Rye, New York

                                    MALOOF BROWNE & EAGAN LLC

                                    By:<u>s/David T. Maloof</u>
                                    David T. Maloof (DM 3350)
                                    Thomas M. Eagan (TE 1713)
                                    411 Theodore Fremd Avenue - Suite 190
                                    Rye, New York 10580-1411
                                    Tel: (914) 921-1200
                                    Fax: (914) 921-1023
                                    dmaloof@maloofandbrowne.com
                                    teagan@maloofandbrowne.com
                                    *Attorneys for Plaintiff*