# Total Terminals International, LLC

## Stevedore and Terminal Service Agreement

for

## Yang Ming Line

cc: YML HQ/MDAM
C.M.Pao
LAX/IML/H.T.Chou
OAK/J.F.Liao

Effective 4/1/02 through 6/30/02

# Long Beach & Oakland

EXHIBIT H

Yang Ming Line
Total Terminals International, LLC
Apr 1, 2002

# MEMORANDUM OF AGREEMENT

This agreement is made and entered into on April 1, 2002 between Yang Ming Line, hereinafter referred to as "CARRIER" and Total Terminals International, LLC, hereinafter referred to as "CONTRACTOR".

## SERVICES TO BE PERFORMED

In consideration of the payment of the rates shown in the Rate & Service Schedules applicable to this agreement, and subject to the provisions of the Operating Plans, Rate and Service Schedules, and Terms and Conditions applicable to this agreement, CARRIER desires certain services of CONTRACTOR and CONTRACTOR agrees to perform for CARRIER the following services:

### Stevedoring and Terminal Services

For CARRIER's fully cellular vessels calling at CONTRACTOR operated facilities at the Ports of Long Beach and Oakland, CA. This agreement also applies to CARRIER's cargo and containers carried on board vessels of the UNITED ALLIANCE consisting of Hanjin Shipping Co., Ltd. and Senator Lines.

This Agreement consists of:

## OPERATING PLAN

The Operating Plan forms an integral part of this agreement between CONTRACTOR and CARRIER and defines the basic operational responsibilities of CONTRACTOR.

## GENERAL TERMS AND CONDITIONS

The General Terms and Conditions form an integral part of this agreement between CONTRACTOR and CARRIER and define basic contract terms including liability.

## RATE AND SERVICE SCHEDULES

The Rate and Service Schedules form an integral part of this agreement between CONTRACTOR and CARRIER and define the rates to be charged by CONTRACTOR for services provided under this agreement.

| | |
|---|---|
| **MEMORANDUM OF AGREEMENT** | Yang Ming Line<br>Total Terminals International, LLC<br>Apr 1, 2002 |

This agreement consists solely of this "Memorandum of Agreement" plus such "Operating Plans", "Rate and Service Schedules" and "Terms and Conditions" as are referenced above. In executing this agreement, CARRIER acknowledges receipt of a copy of the complete agreement.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT by their duly authorized representative on the dates indicated below.

**CARRIER**

Yang Ming Line

By: _[signature]_

Date: 8/30/02

**CONTRACTOR**

Total Terminals International, LLC

By: _[signature] Gongmin Kim_

Date: 8/7/02

|  | Yang Ming Line<br>Total Terminals International, LLC<br>Apr 1, 2002 |
|---|---|
| **OPERATING PLAN - CONTAINERS** | |

1.0     GOALS

2.0     CARRIER SERVICE PATTERN

3.0     STEVEDORING

- Vessel Planning
- Vessel Operations
- Reports

4.0     TERMINAL

- Gate
- Yard
- Reports
- Other Services



<div style="text-align: right">
Yang Ming Line  
Total Terminals International, LLC  
Apr 1, 2002
</div>

# OPERATING PLAN - CONTAINERS

1.0 **GOALS**

This "Operating Plan" is intended to support the following goals:

1.1 To provide stevedoring and terminal services which are cost effective and responsive to the needs of CARRIER and its customers.

1.2 To facilitate effective communications between CARRIER and CONTRACTOR.

2.0 **CARRIER SERVICE PATTERN**

2.1 This agreement covers cargo moving under bills of lading issued by CARRIER and carried on board vessels operated by CARRIER or any of the United Alliance carriers.

3.0 **STEVEDORING**

3.1 Basic stevedoring operations will be under the direction of vessel operator.

3.2 VESSEL PLANNING

Good planning is the key to a smooth and efficient vessel operation. CONTRACTOR is responsible for planning the stowage of containers (and such other cargoes as may be offered onboard vessels) in accordance with the information and instructions supplied by vessel operator prior to the commencement of vessel operations.

For containers to be discharged, CONTRACTOR's planning department needs the following information from vessel operator's traffic and operations personnel:

| Item | Working Time Before Vessel Operation |
|---|---|
| Ship's Manifest | 2 days* |
| Dangerous Cargo Manifest | 2 days |
| Reefer Manifest (if any) | 2 days |
| Break Bulk List (if any) | 2 days |
| Stow Plan | 2 days |
| Special Requirements | 2 days |

> Yang Ming Line
> Total Terminals International, LLC
> Apr 1, 2002
>
> **OPERATING PLAN - CONTAINERS**

For containers to be loaded, CONTRACTOR's planning department needs the following information from vessel operator's traffic and operations personnel:

| Item | Working Time Before Vessel Operation |
|---|---|
| Ship's Stowage Plan (Dangerous Cargo noted) | 1 day** |
| List of Containers to be Loaded | 8 hours |
| Prestow Plan | 8 hours |
| Load List (Break Bulk) (if any) | *8 hours |

NOTE:   \*   To CONTRACTOR's designated documentation personnel
\*\*   Terminal to stow within IMCO rules

Prior to the start of any vessel operation, CONTRACTOR's planning department will meet with vessel operator's representative to review the operational plan for that vessel in detail. Based on timely receipt of the planning information listed herein, this review meeting would be held a minimum of two hours prior to the start of vessel operation.

If the proposed operational plan requires manpower or equipment for the CARRIER's account that is not included in the throughput rate, then CONTRACTOR will obtain signed or verbal approval from the CARRIER's authorized representative before incurring any cost for CARRIER's account.

3.3   CONTRACTOR will unlash and/or lash and load and/or discharge CARRIER containers equipped with I.S.O. corner castings to or from vessels. CONTRACTOR will provide all labor, supervision, gantry cranes, and terminal equipment (except carrier owned chassis).

3.4   CONTRACTOR will provide equipment (except carrier owned chassis) for moving containers from shipside to place of rest on terminal or vice versa.

3.5   CONTRACTOR will accomplish import locations within 2 hours of completion of discharge of bay and will update CONTRACTOR's computer system for availability by use of Mobile Data Terminals.

<div style="border:1px solid">
Yang Ming Line
Total Terminals International, LLC
Apr 1, 2002

**OPERATING PLAN - CONTAINERS**
</div>

3.6    CONTRACTOR will move containers from place of rest on terminal to shipside. When a particular terminal is designated by CARRIER for a decked import operation CONTRACTOR will move containers from shipside to place of rest and premount containers designated by CARRIER providing that sufficient chassis are available.

3.7    CONTRACTOR will check, tally, and record containers into and out of the vessel, including containers shifted on or off vessel.

3.8    <u>Reports</u>

CONTRACTOR will prepare the following lists and reports for the vessel prior to its departure: (unless otherwise noted)

- Bay plan for the areas to be worked at each respective port
- Recapitulation sheet
- Dangerous cargo list
- Reefer cargo list (if any)
- Exception list (damage list)

In addition to the documents above, CONTRACTOR will furnish the following computer generated reports:

- Container discharge list
- Outbound load list
- Outbound container stowage plans
- Non-containerized cargo list
- Operations' recap

3.9    CONTRACTOR shall provide weight calculations for containers loaded.

4.0    <u>TERMINAL OPERATIONS</u>

4.1    CONTRACTOR will provide receiving and delivery services to CARRIER Monday through Friday between 8 AM and 5 PM excluding holidays. Holidays, overtime or extended hours will be worked when so instructed by CARRIER on the following basis:

| |
|---|
| Yang Ming Line<br>Total Terminals International, LLC<br>Apr 1, 2002 |

### OPERATING PLAN - CONTAINERS

4.1.1 Holiday gates occurring on weekdays: CONTRACTOR will invoice the CARRIER its prorata share of the overtime differentials for labor employed on an ILWU overtime day at rates as provided in the Rate Schedule.

4.1.2 Weekend or night gates: CONTRACTOR will invoice CARRIER its prorata share of labor cost at the Per Move/Extra Labor Rates contained in this agreement for the shift worked. CARRIER shall have the right to instruct CONTRACTOR to work overtime gates at any time that CARRIER experiences service problems with the gate performance at the terminal resulting in turntimes that do not meet the agreed contract performance standard and such service failures are caused by CONTRACTOR. CONTRACTOR will promptly respond to a request for an overtime gate resulting from its service failure. Any overtime gate ordered as a result of such a service problem may be utilized for any purpose required by CARRIER to remedy the service problems and may be worked on any shift determined by CARRIER to be necessary to remedy the service problems.

Any such gates ordered by CARRIER shall be 100% for CONTRACTOR's expense.

4.2 CONTRACTOR shall maintain a 45-minute average truck transit time. This guarantee applies to trucks arriving between 8:00 a.m. and 4:30 p.m. and excludes lunch and coffee break times, providing all documentation such as customs entries and paid charges are in order. Any waiting time exceeding average 45 minutes shall be paid by CONTRACTOR, as long as the waiting time has been verified by the terminal at the time of the delay and the delay is caused by unsuccessful operation of CONTRACTOR.

4.3 CONTRACTOR will coordinate movements with CARRIER's main terminal operator, CFS operators, and intermodal carriers.

4.4 CONTRACTOR will complete an Electronic E.I.R. (E-E.I.R.) form for each container interchanged in or out

4.5 CONTRACTOR shall check all seals on inbound and outbound containers at gate to insure that the seals are intact and will immediately report any seal discrepancies to CARRIER.

|  |
|---|
| Yang Ming Line<br>Total Terminals International, LLC<br>Apr 1, 2002 |
| **OPERATING PLAN - CONTAINERS** |

4.6   CONTRACTOR shall weigh export container loads received at gate and report the results on the E-E.I.R.'s. A weight ticket from a certified truck scale may be an adequate substitute.

4.7   CONTRACTOR will provide labor and equipment (except chassis) to ground full export containers and ground/mount empty containers to or from road transport. For a decked import operation CONTRACTOR will provide labor and equipment to mount full containers to road transport.

4.8   CONTRACTOR will provide clerical personnel required for the proper receipt and/or delivery of units from or to the container yard, and for tracing and/or conducting search for containers on the terminal.

4.9   CONTRACTOR will plan and pre-stage outbound loaded containers in the container yard, and will store and handle containers as necessary for vessel operations.

4.10   CONTRACTOR will provide the following basic daily reports and documents:
- Dock Receipts/E-E.I.R.'s
- Gate Transactions Detail (log of equipment in and out)
- Container Inventory Summary
- Chassis Inventory Detail (number of pieces of equipment on hand, based on gate activity with notation of bad order status)
- Container Inventory by Ship File/Port/Container Type
- Full Container Inventory Summary by Ship File
- Daily Operation Report

To the maximum extent possible such information will be provided by EDI procedures between CONTRACTOR and CARRIER.

4.11   CONTRACTOR will check the labeling on dangerous or hazardous export cargo containers against the documentation provided with those containers to insure that the labeling complies with that documentation and that these labels have been affixed before the container is received on the terminal. CONTRACTOR will ensure that dangerous or hazardous labels have been removed from empty containers when returned to the terminal by truckers.

4.12   CONTRACTOR will arrange to receive the inward foreign manifest and freight releases from CARRIER in EDI format if required by CARRIER. CONTRACTOR will also arrange to receive U.S. Customs releases directly from AMS.

Page 9 of 18

|  | Yang Ming Line |
|---|---|
|  | Total Terminals International, LLC |
|  | Apr 1, 2002 |

## OPERATING PLAN - CONTAINERS

4.13 CONTRACTOR will be responsible for the security of CARRIER cargo while at the terminal.

4.14 CONTRACTOR will to the best of our ability ensure that any carrier owned chassis supplied to the terminal by CARRIER are segregated and only used for CARRIER containers or used as specifically directed by CARRIER.

4.15 If requested to do so, CONTRACTOR shall apply high security seals at the gate to specific export loads designated by CARRIER. CARRIER shall provide the seals.

4.16 CONTRACTOR will collect demurrage for inbound full container based on the tarriffs from CARRIER and CONTRACTOR will retain 100% of Port Tariff plus 10% of the difference between the CARRIER Tariff and the Port Tariff. The remainder will be remitted to CARRIER. Outbound full containers will be stored in the terminal subject to the rates, rules, and regulation of Port Tariff and CARRIER shall pay full port tariff charge to CONTRACTOR.

4.17 CONTRACTOR will provide CARRIER with web access to it's off site web based operating systems.

4.18 CARRIER will provide it's own chassis and may participate in a common chassis pool to facilitate wheeled import activities at terminals designated by CONTRACTOR.

TR

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

This agreement covering General Terms and Conditions is entered into on April 1, 2002 between Yang Ming Line, hereinafter referred to as "CARRIER" and Total Terminals International, LLC, hereinafter referred to as "CONTRACTOR"

The parties agree as follows:

### ARTICLE 1.0
### DEFINITIONS

1.1   CARRIER as used herein includes the owners, charterers, managers, officers, agents and other representatives of CARRIER and/or the vessels for which the contemplated services are to be provided.

1.2   Unless CONTRACTOR is advised to the contrary by CARRIER, CONTRACTOR in the performance of its obligations hereunder, is entitled to rely on the instructions, representations and directions given by CARRIER's designated agent or employee(s) of CARRIER at the port where the services are to be rendered.

1.3   CONTRACTOR as used herein refers to Total Terminals International, LLC and includes any and all subcontractors CONTRACTOR may determine to be necessary and appropriate to hire to perform any of its duties, responsibilities or obligations hereunder.

### ARTICLE 2.0
### TERM

Except as otherwise specifically provided for in this agreement, the term of this Agreement shall be effective April 1, 2002 for operations in Long Beach CA. and Oakland, CA. and shall continue in effect until June 30, 2002 and then shall continue in effect until terminated upon sixty (60) day written notice by either party to the other. This agreement is also subject to the termination provisions of Article 15.1 and 15.2.

### ARTICLE 3.0

CONTRACTOR shall perform the stevedoring and terminal services as set forth in the Operating Plan attached hereto, as may be revised from time-to-time by mutual agreement, in an efficient and workmanlike manner.

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

### ARTICLE 4.0 - CONTRACTOR'S LIABILITY

4.1 CONTRACTOR shall be responsible for all loss and/or damage to Terminal facilities, container cranes, transtainers, toplifters, yard tractors, yard chassis and also to cargo, containers, chassis, and/or vessel resulting from its acts, omissions or fault or that of its employees (or subcontractor's employees) during the process of work or while under its custody or control, and it shall defend, indemnify and hold harmless CARRIER from all such loss and/or damage to the property mentioned above.

CONTRACTOR shall give CARRIER, for information purposes, prompt notice of any accident, injury or property damage occurring in connection with the services, facilities, or equipment being provided hereunder which may become the subject of claims or litigation.

4.2 HIMALAYA EXTENSION

(A) With regard to any and all bills of lading or other contracts of affreightment evidencing agreements entered into for the transportation of cargo for which CONTRACTOR's services are employed as stevedore and/or terminal operator, CARRIER shall incorporate therein the following provision or a provision which provides the same conditions directly or by reference, as the case may be:

*The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the goods. Every servant, agent and sub-CONTRACTOR (including all interests engaged in owning or chartering of the Vessel, stevedores, warehousemen, and other independent CONTRACTORs) and the agents of each shall have the benefit of all provisions herein for the benefit of the Carrier as if the provisions were expressly for their benefit and in entering into this contract of carriage, the Carrier does so not only on his own behalf but also as agent for all such servants, agents and sub-CONTRACTORs to the fullest extent permitted by the law applicable to Himalaya Clauses.*

(B) In the event CARRIER does not have the above mentioned clause in its bill of lading, CARRIER shall defend, indemnify and hold CONTRACTOR harmless from any additional liability to which CONTRACTOR is exposed by reason of CARRIER's failure to have included the above mentioned clause in its bill of lading.

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

4.3  CARRIER hereby acknowledges that it has no right, power or authority to extend to anyone the time within which any claim of cargo loss of damage must be filed against CONTRACTOR, specifically including any claim filing period which insures to the benefit of CONTRACTOR pursuant to the provisions of Article 4.2, above.

4.4  Whenever any benefits or limitations on liability referred to in Article 4.2, above are waived, omitted or modified by CARRIER, including but not limited to waiver, omission or modification of any package limitation, CARRIER agrees to include CONTRACTOR as an additional named assured on its applicable insurance policy or policies or otherwise provide adequate insurance to protect CONTRACTOR from any increased liability by reason of any such waiver, omission or modification of any benefit of limitation on liability referred to in Article 4.2, above. In the event CARRIER does not provide CONTRACTOR with insurance as set forth in this paragraph, CARRIER agrees to defend, indemnify and hold CONTRACTOR harmless from any additional liability to which CONTRACTOR is exposed by reason of CARRIER's failure to have included the above mentioned Himalaya Clause in its bill of lading or other contracts of affreightment evidencing agreements entered into for transportation of cargo for which CONTRACTOR's services are employed as stevedore and/or terminal operator.

4.5  In the event CARRIER is not the issuer of the bill of lading for the cargo to be handled by CONTRACTOR, CARRIER expressly agrees it will procure the actual carrier to incorporate the same like Himalaya Clause mentioned in Section 4.2 above in its transportation document. Should CARRIER or the actual carrier fail to do so, then CARRIER shall defend, indemnify and hold CONTRACTOR harmless from any additional liability to which CONTRACTOR is exposed by reason of CARRIER's failure to do so.

## ARTICLE 5.0
## ARREST OR ATTACHMENT OF CARRIER'S VESSEL

In the event CARRIER's vessel is arrested, attached or otherwise made the subject of process of law due to the negligence of the CARRIER while at CONTRACTOR's berth, dock, pier, or other facility, and in the event such arrest, attachment or other process results in any loss of use of such berth, dock, pier or other facility or loss of revenue, or the assessment against CONTRACTOR of any berthing, wharfage, dockage, port or other charges during the period of such arrest, attachment or other process of law, then any and all such losses, assessments or other charges shall be for CARRIER's account.

### STEVEDORING AND TERMINAL SERVICE AGREEMENT
### GENERAL TERMS AND CONDITIONS

### ARTICLE 6.0
### INSURANCE

CONTRACTOR shall at its own cost and expense maintain insurance during the term of this agreement as follows:

6.1 Workers' Compensation Insurance for the protection of its employees in accordance with the California Compensation Act and the Federal Longshoremen and Harbor Workers' Act.

6.2 Bodily Injury Public Liability Insurance in an amount of ONE MILLION DOLLARS ($1,000,000) in respect of any one person and ONE AND A HALF MILLION DOLLARS ($1,500,000) with respect to any one occurrence as protection against injury to or death of any person or persons arising out of the negligence of CONTRACTOR.

6.3 Property Damage Insurance in the amount of FIVE MILLION DOLLARS ($5,000,000) covering CONTRACTOR's legal liability as protection against loss or damage to property arising out of the negligence of CONTRACTOR under this agreement.

6.4 Excess Public Liability and Property Damage Liability Insurance covering all operations in a combined single limit of FIVE MILLION DOLLARS ($5,000,000) in addition to the primary policies.

6.5 CARRIER shall be named as an additional insured party to the extent of CONTRACTOR indemnity hereunder and shall be furnished with Certificates of Insurance evidencing such coverage.

### ARTICLE 7.0
### LABOR

CONTRACTOR will provide sufficient labor for the performance of the services herein contemplated in accordance with prevailing Collective Bargaining Agreement(s), but always contingent upon labor being available to CONTRACTOR. CONTRACTOR shall not be responsible for any loss, damage, delay or non-performance whatsoever arising from strikes, lockouts, union disputes, deliberate work slowdown or stoppage or other labor difficulties or from picketing or other civil disturbance of any kind or any other non-availability of labor beyond the control of CONTRACTOR.

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

### ARTICLE 8.0
### FINES AND PENALTIES

CARRIER shall defend, indemnify and hold CONTRACTOR harmless from any and all liability for any fines, penalties or other liabilities resulting from CARRIER's failure to properly label, placard, manifest, declare true cargo weight(s) or otherwise document any cargo, whether hazardous or otherwise regulated.

### ARTICLE 9.0
### COMPENSATION

9.1 In consideration of CONTRACTOR's performance of the services, identified in the Operating Plan attached hereto, Carrier shall compensate CONTRACTOR at the rates and charges set forth in the Schedule of Rates that shall be revised from time to time by mutual agreement. CARRIER will be notified of any such revision. The Schedule of Rates and Rate Adjustment Porcedure are attached hereto and made part of this Agreement. CONTRACTOR's quoted rates are based upon cargo and vessel information as well as on the prevailing wages, Pacific Maritime Association ("P.M.A.") man-hour assessments, P.M.A. tonnage assessments where/when applicable, payroll insurance and taxes, possessory interest taxes (if any), gross receipts taxes (if any), port tariff wharfage/dockage where applicable, port terminal lease agreements where applicable, equipment rentals, and working conditions in the port or ports where services are performed.

9.2 CARRIER shall pay in United States funds the amounts due CONTRACTOR under this Article within thirty (30) days of the date of CONTRACTOR's invoice. If CARRIER shall fail to pay amounts due and invoiced within thirty (30) days, CARRIER shall, in addition to any other charges due hereunder, pay CONTRACTOR interest on the unpaid balance in the amount of one and one-half (1-1/2) percent per month. If CARRIER in good faith disputes any portion of an invoice, CARRIER shall, within the thirty (30) day period provided herein for payment, give written notice of such dispute to CONTRACTOR and shall pay that portion of the invoice which is not disputed, including any interest due thereon, as if separately invoiced. To the extent such dispute is ultimately resolved in CONTRACTOR's favor by litigation, arbitration or mutual agreement, then interest is due thereon at the rate set forth above from the date payment would have been due on such amounts had there been no dispute. If CONTRACTOR commences legal proceedings to enforce its right to receive compensation under this agreement, CARRIER shall pay CONTRACTOR's reasonable attorneys' fees to the extent incurred in enforcing any rights of CONTRACTOR.

T.R.
9/25/02

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

9.3 CARRIER's failure to pay all amounts, including interest, not the subject of good faith disputes between the parties as set forth in Article 9.3 above, shall be deemed a material breach of this agreement, and shall entitle CONTRACTOR to treat this entire agreement as having been breached by CARRIER and, at CONTRACTOR's sole option, immediately to terminate any on-going or future stevedoring or terminal services and demand that CARRIER's vessel immediately depart CONTRACTOR's pier or berth.

9.4 CARRIER shall make available, within five (5) working days of vessel's departure, all documents (such as tonnage statements) that CONTRACTOR requires to bill for its services. CONTRACTOR shall send invoices, together with supporting documents, to CARRIER's local California agent or as CARRIER may otherwise direct, always subject to the thirty (30) day payment provisions set forth above. In the event CARRIER fails to submit the necessary documents as set forth above, then for each working day subsequent to the fifth (5th) day after vessel's departure, CARRIER's time for payment shall be reduced by one day.

9.5 CARRIER shall at no time deduct any amount from CONTRACTOR's invoices for claimed damages or offsets without the prior written consent of CONTRACTOR.

9.6 CARRIER expressly acknowledges that the services rendered under this agreement, including any services provided by any subcontractor of CONTRACTOR, are provided upon the credit of the vessels served and CONTRACTOR specifically reserves the right to claim and assert a maritime lien against vessels served under this agreement for all such services, plus any applicable port tariff charges which CONTRACTOR is required to pay on behalf of the vessel.

## ARTICLE 10.0
## FORCE MAJEURE

To the extent performance of the services identified in the Operating Plan attached hereto is prevented for any reason beyond the control of the parties to this agreement, including but not limited to, strikes, lockouts, labor disturbances or stoppages, or a concerted work slowdown by longshoremen or other employees of CONTRACTOR, any disruption in electrical power supply, curtailment of fuel supply, acts of God, casualty, picketing or other acts of civil disturbance, acts of governmental authority or severe storm, such performance shall be excused. The party whose performance is so prevented shall give prompt written notice of the intent to rely on the provisions of this Article.

## ARTICLE 11.0
## CONFIDENTIALLY

CARRIER and CONTRACTOR shall preserve the confidentiality of any and all rate schedules which are a part hereof as well as any documents in connection with the business of either.

## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

### ARTICLE 12.0
### INDEPENDENT CONTRACTOR

CONTRACTOR shall at all times be an independent CONTRACTOR or subcontractor of CARRIER and not the agent or employee of CARRIER. The services identified in the Operating Plan attached hereto shall be performed under the supervision of CONTRACTOR subject to the overall supervision and authority of the vessel master with respect to the management of the vessel and any use to the vessel's on-board cargo handling gear.

### ARTICLE 13.0
### SAFETY

With respect to its performance of its services, CONTRACTOR shall comply with all applicable safety laws and regulations and all safety standards contractually assumed under the provisions of applicable collective bargaining agreements.

### ARTICLE 14.0
### ARBITRATION

In the event of any dispute between the parties arising out of the performance or interpretation of the agreement or concerning any claimed loss or damage of up to ONE HUNDRED THOUSAND DOLLARS ($100,000), such matter shall be referred to arbitration in San Francisco under the rules then in effect of the American Arbitration Association as may be supplemented by the discovery provisions of the Federal Rules of Civil Procedure.

### ARTICLE 15.0
### MISCELLANEOUS

15.1 Either party may terminate this agreement in the event of the filing of any voluntary petition in bankruptcy by the other party or the filing of any involuntary petition in bankruptcy by the other party's creditors, which the other party fails to have such petition discharged within sixty (60) days, without notice and in such event any on-going services identified in the Operating Plan attached hereto may be terminated immediately and without prior notice.

15.2 In the event of a failure by either party to perform according to the provisions of these General Terms and Conditions or the Operating Plan attached hereto, the party alleging such failure to perform shall give the other party prompt written notice of any such alleged failures. The party receiving such notice shall have ninety (90) days from receipt of the notice to cure such alleged failure to perform or demonstrate why a failure to perform does not exist. If such failure to perform is not remedied in ninety (90) days, the party alleging the failure may terminate this agreement by notice in writing.

15.3 All written notices given under this agreement shall be given to the intended recipient at its address as set forth below or such other address as it may designate in writing from time to time:



## STEVEDORING AND TERMINAL SERVICE AGREEMENT
## GENERAL TERMS AND CONDITIONS

TO: Yang Ming Line

525 Washington Blvd., 25th Floor

Jersey City, New Jersey 07310

TO: Total Terminals International, LLC

17785 Center Court Drive, Suite 670

Cerritos, California 90703

15.4 This agreement shall be construed, interpreted and enforced in accordance with the laws of the State of California, without reference to the laws of any other jurisdiction, except to the extent that the laws, rules and regulations of the United States of America shall apply.

15.5 Captions at the beginning of each Article are intended for convenience of reference only and shall not affect the interpretation or construction of this agreement.

15.6 No waiver by CARRIER or CONTRACTOR of any of the covenants or conditions of this agreement shall be deemed as a waiver with respect to performance or occurrence of any other covenants or conditions.

15.7 The individuals executing this agreement represent and warrant that they are authorized to bind the party on whose behalf they are executing this agreement to the terms and conditions hereof.

15.8 This document incorporates all terms, agreements, understandings and representations of the parties and supersedes any other agreements, discussions, representations or understandings of the parties hereto.

15.9 This agreement may be executed in three (3) counterpart originals, each of which shall be deemed to be an original when executed and delivered, and all of which shall be deemed to be one instrument.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT by their duly authorized representative on the dates indicated below.

**CARRIER**

Yang Ming Line

By: _[signature]_

Date: 8/30/02

**CONTRACTOR**

Total Terminals International, LLC

By: _[signature]_

Date: 8/7/02