UNITED STATES DISTRICT COURT                06 Civ. 0694 (PKC)

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIPPON EXPRESS U.S.A. (ILLINOIS), INC.,<br><br>Plaintiff,<br><br>- against -<br><br>M/V CHIANG JIANG BRIDGE et ano.,<br><br>Defendants. | DEFENDANT, YANGMING MARINE TRANSPORT CORP.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT ON GROUND OF A MANDATORY AND EXCLUSIVE FOREIGN FORUM SELECTION AGREEMENT |

INTRODUCTION

This reply memorandum of law is submitted on behalf of defendant, YANGMING MARINE TRANSPORT CORP. ("YML"), in support of its motion to dismiss the claims against it on the ground of a mandatory and exclusive foreign forum selection agreement.

ARGUMENT

POINT 1

THE STEVEDORING AGREEMENT ON WHICH PLAINTIFF RELIES IS NOT AN UNDERLYING CARRIER'S PRIVATE CONTRACT OF CARRIAGE. THEREFORE IT DOES NOT SUPERSEDE THE YML BILL OF LADING TERMS AND CONDITIONS..

Imagine a memorandum of law which began with the following statement:

*This case involves damage to a shipment of apples (here-after"oranges"). The damage occurred because the carrier failed to take the special precautions recognized industry-wide as needed for the safe ocean carriage of oranges.*

1

While the attorney writing such an imaginary brief is free to use whatever shorthand references he wishes, referring to "apples" as "oranges" will not make them so.  Moreover, a Court would be justified in wondering just what kind of case the cargo plaintiff had if he felt compelled to argue that his apples were oranges.

Our hypothetical example is not far removed from what plaintiff does in its opposing memorandum.  In his best Lewis Carroll style, opposing counsel argues that a "stevedoring contract" is really an "underlying carrier contract" - because the stevedore "[moves] cargo around a terminal and onto a vessel".  *Pltff's Opp. Mem., 4, 5 - 6.*  By this logic, anytime an attorney personally serves or files papers – or even moves a file around from one room in his office to another – he becomes a private courier.

In fact, several years ago, opposing counsel made pretty much the same argument to the Second Circuit Court of Appeals which rejected it.  See, *Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.,* 235 F.3d 53, 60 (2d Cir. 2000) (Fact that air carrier temporarily stored goods does not render carrier a warehouseman so long storage was only temporary and incidental to the primary goal of interstate shipment).  However much the stevedores in this case may have 'moved plaintiff's cargo around the terminal,' it was only incidental to their business of stevedoring.  Plaintiff makes no contrary showing, and the stevedoring agreement attached to plaintiff's contains nothing which would lead to the conclusion that the stevedores were primarily carriers.  *See, Pltff's Opp. Exhibit H;*  see also, *Robert C. Herd & Co. v. Krawill*

*Machinery Corp.,* 359 U.S. 297, 301 - 303, 79 S.Ct. 766, 769 - 70 (1959) (Stevedore is not a carrier for purposes of the U.S. Carriage of Goods by Sea Act).

A.  THE YML BILL OF LADING DOES NOT MAKE THE STEVEDORE A CARRIER

The starting point for any construction of the YML bill of lading is the language of the bill which distinguishes between an "Underlying Carrier" and a "stevedore".

The YML bill defines "Underlying Carrier" to include:

> Any water, rail, motor, air or other *carrier* utilized by the Carrier [i.e., YML] for any part of the transportation of the shipment covered by this Bill of Lading.

*YML's Mov. EXHIBIT C, cl. 1(l) [Bracketed text is ours].*  Given that the language of a contract is generally given its plain, ordinary meaning [*John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir.2001)], there is nothing in the definition which would suggest that a stevedore and an Underlying Carrier are the same thing - and in fact they are not.[1]

The YML bill does not define "stevedore," but it does distinguish between stevedores and "Underlying Carriers" in the following clause:

---

1       A "stevedore" is an independent contractor employed to load and unload vessels.  *BLACK's LAW DICTIONARY, 1414 (6th ed. 1991); Dougherty v. Haaland,* 457 F.Supp. 860, 865 (E.D.Pa. 1978) aff'd 601 F.2d 574 (3d Cir.) cert. den.  444 U.S. 992 (1979).   A "carrier" is not someone who just 'moves cargo around.' Rather, a "carrier" is one who is engaged in the business of transporting passengers or property by land, as a common, contract, or private carrier.  *BLACK's LAW DICTIONARY,* supra at 214.

"Subcontractor" includes owners and operators of Vessels (other than the Carrier), slot chartered owners, *stevedores*, terminal and group age operators, *Underlying Carriers* and any independent contractor employed by the Carrier in the performance of the Carrier.

*YML's Mov. EXHIBIT C, cl. 1(k) [Emphasis ours].*    The YML bill clearly treats Underlying Carriers and stevedores as different entities performing different functions.


So when clause 7(B)(2) of the YML bill of lading incorporates and gives governing effect to any "private contract of Carriage … [of] any Underlying Carrier,"  it is clear - reading the contract as a whole - that a stevedoring contract is not included. [2]


If the stevedoring agreement [*Pltff's Opp. ExhibitH*] is not an Underlying Carrier's private contract of carriage within the meaning of clause 7(B)(2) of the YML bill of lading, then nothing in that agreement would displace the bill's London forum selection provision – and the first POINT of plaintiff's opposing brief is irrelevant.

---

2       Plaintiff also argues that this was a multi-modal shipment.  *Pltff's Opp. Mem., 4, 5, 6, 7.*  Clearly it was not.  A multi-modal shipment is one that moves by ocean going vessel, and by at least one other non-maritime mode of transportation such as rail or truck.  See, *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 25 - 26, 125 S.Ct. 385, 394 (2005).  However, the subject bill of lading [*YML's Reply Exhibit 6*] shows that the shipment moved "CY" to "CY".  What that means is that YML received the shipment at its load port sea terminal and delivered it to the discharge port sea terminal.  *Senitnel Enterprises, Inc. v. M/V "SIMO MATAVULJ",* 1990 WL 89362, *1 at n. 1 (S.D.N.Y.).  So it was simply a Port-to-Port shipment since YML undertook no land carriage – a fact confirmed by the shipment's booking note.  *YML's Exhibit 7.*

B.     THE TIME BAR ISSUE

In footnote 7 of its brief, plaintiff argues that its claims would be time barred in London. *Pltff's Opp. Mem., 7.*   However, plaintiff makes no legal or factual showing to that effect.  See, *Silgan Plastics Corp. v. M/V NEDLLOYD HOLLAND,* 1998 WL 193079, *3 (S.D.N.Y. 1998) (Speculation as to effect of foreign law insufficient to defeat forum motion).  In any case, a long line of cases has held that it is not an objection to enforcement of a forum clause that the claim would be time barred in the chosen forum, where the party opposing enforcement sued in the wrong forum and let its time to sue in the correct forum expire.  See, e.g.,  *American Home Assur. Co. v. M/V JAAMI*, 2007 WL 1040347, *3 (S.D.N.Y.) (Citing cases).

Although plaintiff speaks of a yet to come claim for $500,000, that claim admittedly does not belong to plaintiff, but to plaintiff's insurer, and, more importantly, it has not been pleaded in plaintiff's complaint, so it is not before the Court.  *Pltff's Opp. Mem.,* 2, 6 (fns.  5- 6 and main text).

C.     LOCATION OF WITNESSES AND DOCUMENTS.

In that same footnote, plaintiff observes that not a single witness or relevant document is located in London.  *Pltff's Opp. Mem., 7, n. 7.*   The same could be said of New York.  In any case, what are essentially *forum non conveniens* arguments have been held to be insufficient grounds for opposing enforcement of a forum clause. See, e.g., *Mitsui & Co. (USA), Inc. v. Mira*

*M/V,* 111 F.3d 33, 37 (5th Cir. 1997).  In any case, there is no showing that the documents in this

case will be so voluminous that they cannot simply be sent to wherever the case has to be heard,.


D.    THE TALMUDIC SCHOLAR AND THE LOGISTICS CLERK


On page 9 of its opposing memorandum, at footnote 9, plaintiff explains that the logistics

clerk in its office who would have approved the use of the YML bill of lading would have had no

legal training, and would have required a Talmudic scholar to make sense of the bill.  There is no

declaration from any such clerk pleading ignorance of the YML bill and wondering what it all

means.  In fact, plaintiff's own papers show that its scenario is purely imaginary.


Plaintiff's complaint alleges that it is an ocean carrier, and that it issues its own sea

waybills.  *YML's Mov. EXHIBIT A, paras. 2, 4.*  On its web site, plaintiff holds itself out to the

general public as logistics provider and carrier :.

http://www.nipponexpressusa.com/home.php

and expertise in international shipping and shipping documents.

http://www.nipponexpressusa.com/services/freight_services/ocean/index.php

*See, YML's Reply Exhibit 1.*  Moreover, the Federal Maritime Commission web site identifies

plaintiff as both a licensed non-vessel operating common carrier (*see, YML's Reply Exhibit 2*)

and a freight forwarder (*see, YML's Reply Exhibit 3*):

http://www3.fmc.gov/fmcfrm1/scripts/ExtReports.asp?tariffClass=oti

http://www3.fmc.gov/oti/lff_listing.asp

Thus, if anyone should understand the ins and outs of bills of lading – or know to make proper inquiry if they don't – it should be plaintiff's personnel.

Moreover, it was not some logistics clerk that approved use of the YML bill of lading, but plaintiff's management. As the Court will remember from prior correspondence [*see, YML's Reply Exhibits 4 and 5*], the bill of lading at bar was issued pursuant to a privately negotiated Service Contract between plaintiff and defendant which provided for the YML bill of lading to prevail over the Service Contract in the event of a conflict. Presumably plaintiff knew and understood the terms of the YML bill when it agreed to the Service Contract.

POINT 2

THERE IS NO AMBIGUITY IN THE YML BILL OF LADING WHICH WOULD JUSTIFY DENYING ENFORCEMENT TO THE BILL'S CLEAR CHOICE OF A LONDON FORUM..

Plaintiff's final argument is that the YML bill of lading does not intend for cases governed by U.S. COGSA to be subject to the London forum clause because other bill of lading provisions envision the applicable law being applied by its own forum. Arguments that incompatible choice of law provisions should defeat a valid forum clause have also been rejected. *Mira M/V,* supra, 111 F.3d at 37. Plaintiff's argument to that effect should be rejected as well.

The forum clause at issue provides in relevant part:

7

> Except as otherwise *specifically* provided herein any claim or
> dispute arising under this Bill of Lading shall be governed by the
> laws of England and determined in English Courts sitting in the
> City of London to the exclusion of the jurisdiction of the courts of
> any other place.  … .

*YML's Mov. EXHIBIT C, cl. 26 [Emphasis added]*.   Thus by the forum clause's wording, any

exception to the London forum must be specific – i.e., particular and definite.  Plaintiff has not

shown that the YML bill contains such an exception.   The provisions plaintiff relies on are

*alternative* provisions.  In other words, they are essentially a "Plan B" in case "Plan A" fails or

cannot be given effect.  It is impossible to deduce from them any specific manifest intent to

override the London forum clause.

 

        The  fact  that  the  YML  bill  provides  that  the  rights  and  obligations  of  the  parties  in

respect  of cargo loss or damage shall be governed by U.S. COGSA is not a specific exception to

the  London  forum  clause  for  the  reasons  discussed  in  POINT  5  of  our  moving  brief – a

discussion plaintiff does not even address.

 

        YML Clause 7(E), also cited by plaintiff, is similarly irrelevant to this motion.   That

clause says:

> In the event the Carriage covered by this Bill of Lading is subject
> to two or more compulsory national laws, then the national law of
> the jurisdiction in which any action is brought shall be applicable.

*YML's Mov. EXHIBIT C.*   However, this is not a case where there are two or more compulsory

national laws.  As plaintiff points out elsewhere in its brief, the shipment at issue moved from

Oakland, California to Japan [*id. at 7, n. 7*], so the English Carriage of Goods by Sea Act 1971

would have no compulsory application [**3**] and thus would not displace the bill of lading agreement that COGSA shall apply.

CONCLUSION

The motion should be granted.

Dated:        New York, NY                    *Respectfully submitted,*

              June 19, 2007                   CICHANOWICZ CALLAN KEANE VENGROW
                                              & TEXTOR, LLP, 61 Broadway, Ste. 3000
                                              New York, NY 10006 – Tel. 212-344-7042


                                              By: /s/_____Paul M. Keane_____
                                                     Paul M. Keane [PK-5934]
                                              Attorneys for Defendant,
                                              YANGMING MARINE TRANSPORT CORP.

---

3    England has adopted the so called "Hague-Visby Rules" – a cargo liability regime that is the fraternal equivalent of U.S. COGSA.  6 BENEDICT ON ADMIRALTY, pp. 1-25 to 1-30;  *Reed & Barton v. M.V. Tokio Exp.,* 1999 WL 92608, *3 (S.D.N.Y.) app. dism'd 210 F.3d 355 (2d Cir. 2000).  Its 1971 Carriage of Goods by Sea gives the force of law to the Hague-Visby Rules. *Tetley,* MARINE CARGO CLAIMS, 1223 – 34 (3d ed. 1988).  The Hague-Visby Rules have compulsory application only where the load port or place of issuance of the bill of lading is in a country that has adopted the Hague-Visby Rules, or where the contract of carriage chooses Hague-Visby as the governing law.  *Id. at p. 1-28, Art. 5.*  The United States (where the goods were loaded and the bill of lading issued) has not adopted the Hague-Visby Rules [*id. at p. 1-30*] and, as plaintiff as acknowledged all along, the bill chooses U.S. COGSA as the governing law.